## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PAUL HERNANDEZ,

           Plaintiff,

    vs.

CITY OF ALBUQUERQUE, *et al.*,

           Defendants.

No. 14-CV-0813-MV-KK

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants City of Albuquerque and Jason Brown's Motion for Summary Judgment [Doc. 22].  Plaintiff Hernandez responded [Doc. 27] and the Defendants replied [Doc. 30].  The Court, having considered the Motion, briefs, attached materials, relevant law, and being otherwise fully-informed, finds that the Motion is well-taken in part and will be **GRANTED IN PART.**

## BACKGROUND

In light of the relatively limited ruling that the Court will render in this matter, the facts pertinent to the resolution of the instant Motion may be easily summarized.  On the evening of September 9, 2012, at approximately "9:50 p.m., Albuquerque Police Department ('APD') Officer Jason Brown initiated a traffic stop of Plaintiff's vehicle on Coors Rd., near Eagle Ranch Rd. in Albuquerque, New Mexico because Plaintiff's vehicle was exceeding the posted speed limit."

1

Defendants' Undisputed Statement [sic] of Material Facts ("DUSMF") ¶ 1.  *See also*
Doc. 27-1 ¶ 4.  While the parties dispute the governing speed limit and Plaintiff's
velocity at the time in question, Plaintiff acknowledges that he was "traveling above
the posted speed limit," and even that "for a brief period, in order to separate from a
large vehicle which was following extremely close, [he] did accelerate ***well above***
the speed limit."  Doc. 27-1 ¶ 5 (emphasis added).

When Officer Brown initiated his overhead lights, Plaintiff pulled his vehicle
over into a parking lot off of the road.  While Plaintiff asserts that "there [was] a
barrier which prevent[ed] any vehicle from pulling over immediately," it is clear
from the lapel camera recording that Officer Brown believed that Hernandez had
continued to drive for longer than necessary after the officer engaged his lights to
signal Hernandez.  Doc. 27 at 2.  A "reasonable mistake of fact does not negate
probable cause" such that the relevant consideration in the instant case is that
Officer Brown reasonably believed that Hernandez drove for longer than was
appropriate and pulled into an inopportune area for a traffic stop.  *Sherhouse v.
Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009).

After approaching Plaintiff's vehicle, Officer Brown observed that "Plaintiff
had red, bloodshot, watery eyes."  DUSMF ¶ 5.  While Plaintiff disputes this
description of his appearance, the witness affidavit on which he relies does little to
substantiate his position.  In his affidavit, Nathan Hoge, evidently a social
acquaintance of Hernandez, swears that he "received a call from Paul Hernandez,
asking to be given a ride home" at some point during "the night of September 9,

2

2012." Doc. 27-2 ¶ 2. Hoge declares that he "did not detect any odor of alcohol, whatsoever" and that "Mr. Hernandez eyes [sic] were not bloodshot or watery." *Id.* ¶¶ 4-5. Even if the Court were to credit Hoge's testimony, the statement is too imprecise for the Court to determine when during the evening Hoge first saw Hernandez and under what conditions, such that it is possible both that sufficient time passed between Brown's and Hoge's observations for Hernandez's eyes and breath to have cleared and that Hoge saw Hernandez's eyes in poor light and was therefore unable to make any effective evaluation. Unfortunately, the footage from Officer Brown's lapel camera does not clarify matters: for the majority of the recording, Hernandez's eyes are not visible and, during the brief moments when they are, the Court is unable to determine whether they are red, bloodshot, or watery. Consequently, as Plaintiff has not presented competent contradictory evidence, the Court will accept Defendant's version of events and, therefore, finds that Officer Brown determined Plaintiff's eyes to be bloodshot and watery.

After the vehicles had come to a stop, Officer Brown approached Hernandez; Plaintiff appropriately provided Officer Brown with relevant documentation. DUSMF ¶ 8. From the video, it does not appear that Hernandez was "slow to provide" the documentation, although he does appear to fiddle with his credentials during the conversation. At this point, the officer asked Hernandez to place his hands on the bottom of the driver's side window frame as part of "a seated horizontal gaze nystagmus ('HGN') test," which police sometimes use to assess intoxication. *Id.* ¶ 10. However, Plaintiff "refused to submit to field sobriety tests"

and repeatedly insisted that he had not been drinking.  *Id.* ¶ 11.  Officer Brown

eventually arrested Hernandez for driving under the influence of an intoxicating

substance.

On September 7, 2014, Hernandez brought suit against Officer Brown and

the APD in this Court, alleging violations of the United States Constitution,

actionable pursuant to 42 U.S.C. § 1983, and tortious conduct cognizable under the

New Mexico Tort Claims Act.  The Defendants now move for summary judgment,

relying, in part, on qualified immunity.

## DISCUSSION

### I.   Summary Judgment in Qualified Immunity Cases

The well-trod standard on a motion for summary judgment shifts

significantly where, as here, the defendants invoke the protection of qualified

immunity.  *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).  In such

instances, the plaintiff bears the "heavy two-part burden" of establishing that "the

defendant's actions violated a [federal] constitutional or statutory right" and that

the right in question "was clearly established at the time of the defendant's

unlawful conduct."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal

quotation marks omitted).  Of course, it is now settled law that the Court may elect

"which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case."  *Pearson v. Callahan*, 555

U.S. 223, 236 (2009).  If the plaintiff meets its burden under this framework, the

Court then proceeds with its ordinary summary judgment analysis and the burden

reverts to the defendants to demonstrate that no genuine issue of material fact exists that would defeat their claim for qualified immunity. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993). Here, Plaintiff has failed to demonstrate that Defendants' conduct violated any right secured by federal law, such that the Court need not reach traditional summary judgment analysis.

## II.   Section 1983 and Unlawful Search and Seizure

The Fourth Amendment permits a warrantless arrest only if the officer had probable cause to believe that a crime had been committed. *See, e.g.*, *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground.") (emphasis original). The probable cause standard, although vexingly imprecise, is well-settled: "[a] police officer has probable cause to conduct a search [or arrest] when the facts available to [her] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (internal quotation marks omitted); *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014) ("Probable cause refers to a probability or substantial chance of criminal activity, based on the commonsense [and] practical considerations of everyday life.") (modification original, internal quotation marks and citation omitted). Given its reliance on inherently rough, practical determinations, "probable cause is not reducible to precise definition or quantification" and the

5

Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Harris*, 133 S. Ct. at 1055. (internal quotation marks omitted). *Cf. Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("the ultimate touchstone of the Fourth Amendment is reasonableness.") (internal quotation marks omitted).  Importantly, the Court "may not engage in a divide-and-conquer analysis of facts to determine whether probable cause existed" but rather should view all of the factors together.  *United States v. Muñoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (internal quotation marks omitted).

In a qualified immunity case, however, this analysis shifts to accommodate the retrospective deference inherent in Section 1983, such that the Court must evaluate "whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).  Such "[a]rguable probable cause exists where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis original).  Thus, a "defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).  In essence, this framework prohibits courts, when evaluating police work with the benefit of

hindsight, from imposing civil liability in instances where, although an arrest was not supported by probable cause, a reasonable officer could have believed that it was at the time.

There is no doubt that Hernandez's arrest was sustained by arguable probable cause.  First, Hernandez was speeding, including, at least for a brief period, at a velocity significantly in excess of the posted speed limit.  Second, Plaintiff continued driving for longer than necessary after Officer Brown engaged the lights on his vehicle; even if Officer Brown was mistaken about the presence of a traffic barrier, the law merely requires his sincere, reasonable belief as to the fact supporting probable cause.  Third, Officer Brown observed that Plaintiff had bloodshot and watery eyes, which are commonly associated with intoxication. Finally, Hernandez refused to submit to a field sobriety test.  While he may be correct that he "was not required" to do so, the Tenth Circuit has repeatedly explained that declining to participate in such a test may contribute to probable cause.  *See, e.g. Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) ("A reasonable officer … could view Plaintiff's refusal to submit to a field sobriety test as indicative of an intent to conceal evidence of guilt.").  Given these factors, a reasonable police officer *could* have believed that there was probable cause to arrest Hernandez.

Plaintiff offers nothing to the contrary.  Indeed, his argument with respect to probable cause relies entirely on New Mexico cases which do not bind this Court. That is, while New Mexico substantive law defines the scope of the offense for which Plaintiff was arrested, federal constitutional law is the sole relevant authority on

the scope of probable cause.  *See, e.g.*, *Dodd v. Richardson*, 614 F.3d 1185, 1193

(10th Cir. 2010) ("To recover under § 1983, a plaintiff must establish the violation of

a right secured by the Constitution and laws of the United States.") (internal

quotation marks omitted); *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d

1052, 1062 (D.N.M. 2010) ("Section 1983 creates only the right of action; it does not

create any substantive rights; substantive rights must come from the Constitution

or federal statute.").  Defendants are therefore entitled to judgment as a matter of

law as to this Count.

### III.    New Mexico Tort Claims Act

Plaintiff has also pled claims arising from the New Mexico Tort Claims Act.

As each of these remaining causes of action is a creature entirely of New Mexico

statutory law, the Court is permitted to dismiss these counts in favor of permitting

their prosecution in state court.  *See* 28 U.S.C. § 1367(c)(3).  Here, the Court will

accede to the Tenth Circuit's request that the district courts "should decline the

exercise of jurisdiction by dismissing the case without prejudice" where all federal

law claims are dismissed before trial.  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th

Cir. 2010).  That is, "[w]hen all federal claims have been dismissed, the court may,

and usually should, decline to exercise jurisdiction over any remaining state

claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal

quotation marks omitted).  The Court perceives no circumstances in this case that

counsel it to reject the ordinary rule in this circuit and exercise jurisdiction over an

action now predicated entirely on state law; therefore, the Court will dismiss the

8

claims arising under the New Mexico Tort Claims Act without prejudice in order to

permit Hernandez to pursue them in the courts of New Mexico if he is so inclined.


## CONCLUSION

Officer Brown had arguable probable cause to arrest Hernandez for driving

under the influence of an intoxicating substance.  Absent a federal claim, this Court

will decline to exercise jurisdiction over the remaining causes of action in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary

Judgment [Doc. 22] is **GRANTED IN PART** and that Plaintiff's counts brought

under the New Mexico Tort Claims Act are **DISMISSED WITHOUT**

**PREJUDICE.**

Dated this 1st day of September, 2015.

_____

**MARTHA VÁZQUEZ**
UNITED STATES DISTRICT JUDGE


**Kristin J. Dalton**                          **Erlinda O. Johnson**
Assistant City Attorney                        Law Office of Erlinda Ocampo Johnson
Albuquerque, NM 87103                          Albuquerque, NM 87102
*Attorney for Defendants*                      *Attorney for Plaintiff*

9